IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAYNE WILSON | * | CIVIL ACTION NO. 13-1351 |
| 6474 West Castle View Drive | * | |
| West Valley City UT 84128-4206 | * | SECTION NO. _____ |
|     Plaintiff, | * | |
| | * | JUDGE _____ |
|   vs. | * | |
| | * | MAGISTRATE: _____ |
| Eric Fanning, Acting Secretary | * | |
| of the Air Force, In his official capacity | * | |
| 1670 Air Force Pentagon | * | |
| Washington, DC 20330-1670 | * | |
| | * | |
| LT GEN Stanley E. Clarke, III, USAF | * | |
| Commander, Air Guard | * | |
| National Guard Bureau | * | |
| 500 Fetchet Avenue | * | |
| Andrews AFB, MD 20762-5157 | * | |
| | * | |
| BRIG. GENERAL Jefferson Burton | * | |
| The Adjutant General of the State of Utah | * | |
| 12953 Minuteman Dr. | * | |
| Draper, UT 84020 | * | |
| | * | |
| LT COL Kevin Tobias, Commander, | * | |
| 130th  Engineering Installation Squadron, | * | |
| Utah Air National Guard | * | |
| 765 North 2000 West | * | |
| Salt Lake City UT 84116-2999 | * | |
|     Defendants | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## **COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes plaintiff Layne Wilson, by

and through his undersigned attorney,  who alleges that:

1

1.

Plaintiff is a citizen of the United States and domiciled in West Valley City, Utah.

2.

Jurisdiction is alleged under 5 U.S.C. § § 552a(g)(5) and 702 and 28 U.S.C. §§ 1331, 1361 and 220 and 42 U.S.C. § 2000-bb.  This action is also brought pursuant to Rule 65, Federal Rules of Civil Procedure.  To the extent that any waiver of sovereign immunity is required to be plead, such waiver is articulated by 5 U.S.C. §  702.

3.

a.    Defendant Eric Fanning is that official designated by the President who has the final authority over the administration as the Executive Agent for the Department of the Air Force  in all matters pertaining to the planning for, and the deployment and employment of military resources.

b.    Defendant Stanley E. Clarke, III  is that official designated by the President to oversee the operation of the 175 Air National Guard units of the 50 States, the District of Columbia, Guam, Puerto Rico and the Virgin Islands in 213 separate locations in support of their federal responsibilities under Title 10 and Title 32 of the Untied States Code.

c.    Defendant Jefferson Burton is the Adjutant General of the State of Utah and a federally recognized military officer and Commander of the Utah National Guard which is a part of the National Guard of the United States.

d.    Defendant Tobias is a federally recognized military officer and the plaintiff's

Commanding Officer.

## ORGANIZATION OF THE NATIONAL GUARD OF THE UNITED STATES

4.

That National Guard is part of the reserve component of the United States  pursuant to 32 U.S.C. § 101(3) and the federal National Guard of the United States. 10 U.S.C. § 10111.

5.

The Utah National Guard is federally recognized and part of the National Guard of the United States. 10 U.S.C. § 10111.

6.

Plaintiff is a part time National Guardsman and federal Reservist and as such is entitled to and receives pay from the United States.

7.

The National Guard is divided into the Army National Guard and the Air National Guard pursuant to 32 U.S.C. § 101(3).

8.

Plaintiff is a member of the Air National Guard.

9.

The Air National Guard is considered an integral part of the first line defense of the United States as articulated by 32 U.S.C. § 102.

10.

The Secretary of the Air Force  is responsible for the inspection of the Air National Guard

3

to ensure that they meet the material, equipment, personnel and training readiness as proscribed by 32 U.S.C. § 105.

11.

The Air National Guard, pursuant to 32 U.S.C. §§ 107, is supported by funds apportioned from the Treasury of the United States.

12.

Pursuant to 32 U.S.C. § 110, the President is required to prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard.

13.

The President has delegated authority to the Secretary of the Air Force to prescribe regulations and issue orders necessary to organize discipline and govern the National Guard. This includes AFI 1-1, which the Secretary has specifically made applicable to members of the Air National Guard.   Violation of this directive can result in administrative action or punishment under the Uniform Code of Military Justice irrespective of whether a Guardsman is in state, federal or civilian service.

14.

A National Guard Bureau was established by 10 U.S.C. § 10501 to advise the Secretary of the Air Force on matters pertaining to the Air National Guard.

15.

The Secretary of the Air Force, pursuant to 10 U.S.C. § 10503(2) is responsible for developing and prescribing a charter which includes the training and discipline of the Air

National Guard.

16.

Pursuant to 10 U.S.C. §, 10503(10), the National Guard Bureau is empowered to manage the Air Guard, subject to the directives of the Secretary of the Air Force.

17.

Pursuant to 32 U.S.C. § 108 the President may direct that federal funds appropriated to National Guard organizations be forfeited if they do not comply with regulations promulgated pursuant to 32 U.S.C. § 110.

18.

**GENERAL ALLEGATIONS**

19.

Plaintiff is a twenty-seven year veteran of the Utah National Guard who has served on active duty as part of Operation Iraqi Freedom in support of combat operations abroad.

20.

Plaintiff is currently a Technical Sergeant (TSgt) in pay grade E-6.

21.

Plaintiff is also a federally recognized Technical Sergeant in the Air Force Reserve of the United States.

22.

Plaintiff is a committed member of the Church of Jesus Christ of the Latter Day Saints (LDS).

23.

The LDS doctrine holds that homosexual marriage is a sin.

24.

The homosexual act is prohibited by 10 U.S.C. § 925.

25.

On November 3, 2012, plaintiff reenlisted for six years in the Air National Guard and the federal Air Force Reserve.

26.

On December 2, 2012, while in an inactive duty for training status, plaintiff sent an email message to a person he thought to be a Chaplain, at the United States Military Academy in West Point, New York.

27.

The email message said: "I just read an article that a homosexual wedding was performed at the Cadet Chapel at West Point.  I need to let you that this is wrong on so many levels.  If they wanted to get married in a hotel, that is one thing.  Our base chapels are a place of worship and this is a mockery to God and our military core values.  I have proudly served for 27 years and this is a slap in the face to us who have put our lives on the line for this country.  I hope sir that you will take appropriate action so this does not happen again."

28.

On this date the Defense of Marriage Act (DOMA) was still valid federal law and arguably would have barred the purported marriage from taking place.

29.

Plaintiff has right and duty under R.C.M. 301 of the Manual for Courts-Martial to report what he believes to be an offense under the Uniform Code of Military Justice.

30.

A violation of DOMA at the time of the e-mail was prosecutable under 10 U.S.C. § 934.

31.

The Commandant of Cadets at the U. S. Military Academy forwarded the email to the Adjutant General of the State of Utah with orders to take action against Wilson.

32.

Th Adjutant General forwarded the information to defendant Tobias.

33.

Tobias illegally rescinded the six year enlistment contract, without providing notice to plaintiff Wilson.

34.

Concurrent with the illegal rescission, Tobias took action to stop Wilson's medical benefits effective 11 December 2012.

35.

At all material times, Wilson's wife was suffering from Stage Four Breast Cancer and was undergoing critical and potentially life saving treatment..

36.

On or about December 14, 2012Tobias presented Wilson with the following ultimatum:

Agree to a one year reenlistment contract and make preparations to retire or accept a discharge with loss of medical benefits.

37.

Out of concern for his wife's medical condition, Wilson acquiesced and signed the one year enlistment contract. Nothing was said about further actions administrative actions.

38.

On 10 February 2013, Tobias issued Wilson a Letter of Reprimand for the incident.

39.

On or about 16 April 2013 Wilson filed a protected communication with Congressman Chris Stewart complaining about the reprisal.

40.

On 19 June 2013, Colonel Blunck of the Utah National Guard responded to the protected communication condoning Tobias' actions.

41.

On 9 July 2013, plaintiff via counsel demanded that the six year reenlistment contract be reinstated and the Letter of Reprimand be rescinded and expunged.

42.

On or about 10 July 2013, plaintiff became aware that defendants were "data mining" his Face book page.

43.

On or about 16 July, 2013, defendant Tobias conceded "procedural irregularities" in the

substitution of enlistment agreements and agreed to restore the six year enlistment contract.  The change has not been reflected in plaintiff's permanent online file which continues to show a one year contract..

44.

On or about 16 July 2013, plaintiff via counsel advised that the Letter of Reprimand must be removed and that the Utah National Guard must take action to prevent any reprisal from Tobias or other officials against plaintiff.

45.

On or about 18 July 2013, plaintiff via counsel was advised that the Letter of Reprimand would not be removed.

46.

Defendant Tobias, without notice or legal justification, blocked plaintiff's access to his email account.

47.

On August 2, 2013, plaintiff was presented with another Letter of Reprimand concerning a Facebook post that was accidentally posted and immediately removed.  The action giving rise to this second Letter of Reprimand was purportedly for a violation of AFI 1-1, a copy of which was provided with the letter.

48.

Upon information and belief, defendants were "data mining" plaintiff's Facebook account.

49.

Earlier that date, plaintiff was notified that a Security Information File had been opened and that his security clearance had been suspended.

50.

Defendant Tobias has manifested an intention to rescind plaintiff's security clearance and administratively separate him from the National Guard of the United States.

51.

The Security Information File has been forwarded to the Air Force Central Adjudication Facility  (AFCAF) for final determination.

52.

AFCAF is a federal agency under the control of defendant Fanning.

## VIOLATION OF RELIGIOUS FREEDOM

53.

The Religious Freedom Restoration Act, (RFRA) 42 U.S.C. 2000-bb, prohibits the government from substantially burdening a person's exercise of religion unless it is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

54.

The First Amendment to the Constitution precluded the United States government from enacting any law that limits the free exercise of religion.

55.

The December 2, 2012 e-mail was an expression of religious beliefs.

56.

Defendant Tobias illegally rescinded Wilsons six year enlistment contract in retaliation for exercising his religious beliefs.

57.

Defendant Tobias stated: "We talked about his feelings about DADT and how he doesn't agree with it, I then told him that maybe this is a good time for him to move on because we've been ordered to not have an opinion about Gays in the military and we need to treat them as we would treat anyone else in the service of our country.  I also reiterated that I respect his feelings but I'm not comfortable reenlisting him with his strong feelings about this matter."

58.

 Air Force Instruction I-I paragraph 2.12.2 states "Your right to practice your religious beliefs does not excuse you from complying with directives, instructions, and lawful orders." The directive goes on to state that while an Airman can request accommodation, such accommodations can be denied.

59.

Colonel Ronald Blunck, who investigated plaintiff's complaints, stated that plaintiff had to support the DADT policy despite his religious beliefs, effectively denying any accommodation.

60.

The initial Letter of Reprimand was issued to reprimand plaintiff for exercising his religious beliefs.

61.

In the initial Letter of Reprimand, Tobias stated the following: "This email was in violation of the rules and regulations discussed, and is in direct opposition to the conversation that you and I had on 3 November 2012, just the month prior, during which I mentioned that we as military members must live under tighter rules and guidelines.  To have a strong force, when we raise our arm to the square to support and defend the constitution and the leaders appointed over us, while in uniform our opinions and feelings are second to following the laws, regulations and decisions of our elected and military leaders.  If you have such a strong aversion to those rules and regulations in uniform, you have the choice to depart our ranks and live as you please, but while in uniform this behavior is not tolerated."

62.

The actions taken against Wilson were a violation of the Free Exercise clause of the First Amendment and  RFRA.

63.

AFI 1-1, facially and as applied, is a violation of the free exercise clause of the First Amendment and RFRA,

## ADMINISTRATIVE PROCEDURES ACT

64.

The Administrative Procedures Act at 5 U.S.C. § 702 authorizes judicial review for a legal wrong because of agency action within the meaning of a relevant statute.

65.

The Air Force, the National Guard Bureau, the Utah National Guard acting as a part of the National Guard of the United States and the 130th Engineering Installation Squadron, acting as a part of the Air Force Reserve and the National Guard of the United States are agencies within the scope of 5 U.S.C. § 551(1).

66.

Pursuant to 5 U.S.C. § 706, a federal district court is empowered to compel agency action unlawfully withheld or unreasonably delayed; and to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary and capricious, contrary to the Constitution, law or regulation of the Untied States, *ultra vires*, without observance of procedure required by law, unsupported by substantial evidence or unwarranted by the facts.

67.

The rescission of the six year enlistment contract was arbitrary and capricious and in violation of the Constitution, laws and regulations of the United States.

68.

The two Letters of Reprimand was purportedly issued for violation of federal regulations.

69.

The 10 February 2013 Letter of Reprimand was arbitrary and capricious, unsupported by substantial evidence, unwarranted by the facts and contrary to the Constitution, laws and

regulations of the United States.

70.

Department of Defense (DOD) Directive 1350.2 prohibits discrimination on the grounds of religious belief or practice.

71.

The actions taken against Wilson were *de facto* and *de jure* discrimination on the grounds of religious beliefs and practice in direct violation of DOD Directive 1350.2.

72.

DOD Directive 7050.06 implements the Military Whistleblower Act 10 U.S.C. §1034 and makes it DOD policy that (1) members of the Armed Forces shall be free to make  protected communications; (2) no person shall restrict a member of the Armed Forces from making lawful communication; (3) members of the Armed Forces shall be free from reprisal for making or preparing to make a protected communication; (4) no person may take or threaten to take an unfavorable personnel action, or withhold or threaten to withhold a favorable personnel action, in reprisal against any member of the Armed Forces for making or preparing to make a protected communication (5) personnel violating this policy are subject to discipline via the Uniform Code of Military Justice or the civil service discipline system.

73.

The LOR and the rescission of the six year contract were in reprisal for the official and protected communication sent on December 2, 2012.

74.

Recent activities including the data mining of Wilson's Face book account and the

suspension of his security clearance are reprisal for Wilson's protected communication to his

Congressman and for a letter sent by counsel to the National Guard Bureau.

75.

These actions are in direct violation of DOD Directive 7050.06.

76.

Pub.L. 112-239. Div. A, Title V, § 533, Jan. 2, 2013, 126 Stat. 1727, provides in pertinent

part that:

> The Armed Forces shall accommodate the beliefs of a member of the armed forces
> reflecting the conscience, moral principles, or religious beliefs of the member and, in so
> far as practicable, may not use such beliefs as the basis of any adverse personnel action,
> discrimination, or denial of promotion, schooling, training, or assignment.

77.

The LOR issued 10 February 2013 and AFI 1-1 were a violation of Pub.L. 112-239. Div.

A, Title V, § 533, Jan. 2, 2013, 126 Stat. 1727 as well as the Religious Freedom Restoration Act.

## PRIVACY ACT

78.

The Utah National Guard, in its capacity as a part of the Air Force Reserve and the

National Guard of the Untied States is a federal agency within the scope of 5 U.S.C. § 552a(1).

79.

Defendants maintain a system of records on Wilson including the Letter of Reprimand

and other unknown records.

80.

Plaintiff has demanded an amendment of the system of records by expunging both letters of reprimand.

81.

Defendants have refused to amend the system of records.

82.

The refusal to amend is a violation of 5 U.S.C. 552a(d).

83.

In a letter to a concerned citizen, Lieutenant Colonel Hank McIntire, a Public Affairs Officer speaking on behalf of defendant Burton disclosed private medical information not previously disclosed outside of the agency.

84.

The disclosure was not only inaccurate but related to a completely different circumstance than the previous disclosures concerning loss of medical benefits.

85.

The disclosure was both false and malicious and made with the sole intention of embarrassing plaintiff.

## SPEECH CLAUSE OF THE FIRST AME4NDMENT

86.

Plaintiff, like all Americans, has a right subject to Constitutional restrictions, to engage in

free speech.

87.

When not on active duty or inactive duty for training, plaintiff is a civilian not subject to the Uniform Code of Military Justice nor susceptible of receiving pay and monetary benefits.

88.

At all material times, the Air Force has no published or distributed policy concerning social media.

89.

Plaintiff made a number of posts on his Facebook page that criticized President Obama, urged his impeachment, took him to task for cancelling a fireworks event for service members while taking a trip to Africa, urging his impeachment, criticizing religious persecution and expressing support for the Constitution.  There were one or two posts concerning Edward Snowden supporting his revelations about illegal domestic spying and one comment stating that Snowden should not go to jail.

90.

Although the posts were fairly innocuous, they were used as the basis for questioning plaintiff's allegiance to the United States.

91.

The authority for the second letter of reprimand was AFI 1-1 which states in pertinent part:

Airmen interact with individuals through many forms of communication,

17

including face-to-face, telephone, letter, e-mail, text messages, social networking services, and social media. Social networking services include weblogs, message boards, video sharing, and social networking sites, (e.g., YouTube, Facebook, MySpace, Twitter, Google Apps) which are web-based services that allow individuals and communities of people to stay in touch. Compliance with the standards discussed in this instruction does not vary, and is not otherwise dependent on the method of communication used. You are personally responsible for what you say and post on social networking services and any other medium. Regardless of the method of communication used, Air Force standards must be observed at all times, both on and off-duty.

You must avoid offensive and/or inappropriate behavior on social networking platforms and through other forms of communication that could bring discredit upon on the Air Force or you as a member of the Air Force, or that would otherwise be harmful to good order and discipline, respect for authority, unit cohesion, morale, mission accomplishment, or the trust and confidence that the public has in the United States Air Force.

Airmen who provide commentary and opinions on internet blogs that they host or on others' internet blogs, may not place comments on those blog sites, which reasonably can be anticipated, or are intended, to degrade morale, good order, and discipline of any members or units in the U.S. Armed Forces, are Service-discrediting, or would degrade the trust and confidence of the public in the United States Air Force.

92.

AFI 1-1 is constitutionally void for vagueness since it laves to Air Force discretion what communications are forbidden,

93.

AFI 1-1 acts to chill the free speech, including both political and religious speech, of members of the Air National Guard including plaintiff.

94.

AFI 1-1 is overbroad since it limits plaintiff's political and religious speech even when he is not in an active duty or inactive duty status or otherwise subject to the Uniform Code of

Military Justice.

### 95.

AFI 1-1 facially and as applied to plaintiff, violates the Free Speech clause of the First Amendment to the Constitution.

### 96.

Plaintiff holds the Air Force Commendation Medal, three Air Force Achievement Medals, 6 Air Reserve Forces Meritorious Service Medals, the Army Reserve Component Achievement Medal, two National Defense Service Medals, the Global War On Terrorism Expeditionary Medal, the Global War on Terrorism Service Medal, four Air Force Longevity Service Medals, two Armed Forces Reserve Medals, the Army NCO Professional Development Ribbon and the Army Service Ribbon.

### 97.

As well as reprising against this outstanding, decorated warrior for his religious beliefs, defendants are trying to deprive him of his right to speak freely, when in civilian status, via his Facebook page.

### 98.

The lack of documented guidance at all material times concerning social media results in an arbitrary and inelastic policy where defendants can stifle political speech even when citizen soldiers like Plaintiff are in a civilian status.

### **DUE PROCESS CLAUSE**

### 99.

19

The failure of defendants to comply with DOD and Air Force regulations, issued pursuant to statute, deprived plaintiff of his right to due process under the Fifth Amendment to the Constitution of the United States.

100.

The failure of defendants to comply with the First Amendment to the Constitution, RFRA and Pub.L. 112-239. Div. A, Title V, § 533, Jan. 2, 2013, 126 Stat. 1727 deprived plaintiff of his right to due process under the Fifth Amendment to the Constitution of the United States.

101.

The allegations that the Facebook posts called into question plaintiff's allegiance to the United States are too vague to allow Plaintiff to prepare an adequate response.

102.

Defendants are depriving Plaintiff of reasonable notice as to the allegations.

103.

Despite a reasonable request, Defendants have failed to identify specific Facebook posts that they believe call Plaintiff's's allegiance to the Untied States into question.  Instead they have provided 74 pages of Facebook posts without providing specificity as to which, if any posts, are at issue.

104.

The lack of specificity is a violation of  DOD Directive 5200.2 and DOD 5200-2-R

105.

Defendant enjoys a liberty and property interest in his career.

20

106.

The allegations delineated in herein individually and in the aggregate, resulted in plaintiff being denied the due process of law required by the Fifth Amendment to the Constitution of the United States of America.

## DECLARATORY JUDGMENT

107.

The Declaratory Judgment Act, 28 U.S.C. § 2201 empowers a federal district court, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

108.

This court should declare that the actions of defendants are a violation of RFRA.

109.

This court should declare that the actions of defendants are a violation of Pub.L. 112-239. Div. A, Title V, § 533, Jan. 2, 2013, 126 Stat. 1727.

110.

This court should declare that the actions of defendants are a violation of the Privacy Act 5 U.S.C. 552a.

111.

This court should declare that the actions of defendants are a violation of DOD Directives 7050.06, 1350.2, 5200.2 and DOD 5200-2-R.

112.

This court should declare that the actions of defendants are unsupported by substantial evidence.

113.

This court should declare that the actions of defendants are arbitrary and capricious.

114.

This court should declare that the actions of defendants are irrational and constitute material error.

115.

This court should declare that the actions of defendants are unwarranted by the facts.

116.

This court should declare that the actions of defendants are in violation of the First and Fifth Amendment to the Constitution.

117.

This court should further declare that AFI 1-1, both facially and as applied to plaintiff, is void for vagueness, overbroad and a violation fo the Free Speech and Free Exercise clause of the First Amendment to the Constitution of the United States.

## REQUEST FOR INJUNCTIVE RELIEF

118.

Unless defendants are permanently enjoined from discriminating against plaintiff he can expect continued negative personnel actions, reprisal and harassment, administrative action and

possible prosecution under the Utah Code of Military Justice or the Uniform Code of Military

Justice.

### 119.

No harm will result to any interested party or to the public good by prohibiting further

discrimination.

### 120.

Plaintiff has  exhausted his administrative remedies to the extent that he is able to do so.

Responding to the two Letters of Reprimand and to the security clearance suspension would be

futile. .

### 121.

Plaintiff will suffer irreparable harm if the discrimination continues.  This includes the

loss of medical benefits for his wife who will die without treatment.

### 122.

Plaintiff seeks a permanent injunction pursuant to the provisions of 5 U.S.C. § 701 et

seq., and other federal laws and regulations to protect Plaintiff from discrimination and reprisal.

### 123.

Plaintiff does not have an adequate remedy at law, in that only an injunction will prevent

him from the illegal discrimination and reprisal.

### 124.

Unless defendants are permanently enjoined from separating plaintiff, his rights will be

significantly impaired and he will suffer irreparable harm both financially and medically.

WHEREFORE, Plaintiff prays that:

1.      The court issue a preliminary and permanent injunction against the defendants, their agents, employees, and successors in office, and/or anyone acting for or in concert with any of them, from discriminating or reprising against him on the basis of religious beliefs to include but not limited to further administrative action and any further action concerning his security clearance as a reult of the Facebook posts;

2.      That the Letter of Reprimand and all references thereto be removed from his official record and any system of records maintained by Defendants;

3.      That the plaintiff's security clearance and e-mail access be restored;

4      The court issue a judgment declaring the actions taken against plaintiff were in violation of the Constitution and laws of the United States and regulations delineated herein which were properly issued pursuant to statutory authority;

5.      The court find that defendants abused their discretion and acted arbitrarily and capriciously in their actions against plaintiff;

6.      The court find that defendants actions were unsupported by substantial evidence;

7.      The court waive bond or in the alternative set a zero bond for this action;

8.      The court award costs of this action to the plaintiff;

9.      The court award attorneys fees in this action to the plaintiff pursuant to the Privacy Act and the Equal Access to Justice Act, 28 U.S.C. § 2412(d);

10.     Such other relief as the court deems proper including but not limited to any relief available pursuant to 28 U.S.C. § 2205.

Respectfully Submitted,
//s// John B. Wells
John B. Wells
DC Bar #450165
P. O. Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd., Suite 201D
Slidell, LA 70458 (physical)
985-641-1855
985-649-1536 (fax)
JohnLawEsq@msn.com

Service will be made per Rule 4i

STATE UTAH
COUNTY OF _____

      Before me Notary Public, personally came and appeared, Layne Wilson, a person of the full age of majority and known to me who did, under oath, depose and say:

      That he is the plaintiff in the case *Layne Wilson v. Eric Fanning et. al*

      That he has read the complaint in this matter and verifies that the allegation therein are true and correct.


_____
Layne Wilson

SUBSCRIBED AND SWORN TO BEFORE ME this _____  day of _____, 2013.

_____
Notary Public


My Commission Expires: _____